1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 5/12/10**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

PROSURANCE GROUP, INC., a California Corporation,

                Plaintiff,

    v.

ACE PROPERTY & CASUALTY INSURANCE COMPANY; ACE AMERICAN INSURANCE COMPANY; AND DOES 1-50 INCLUSIVE,

                Defendants.

Case Number C 10-00608  JF (PVT)

**ORDER[1] GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Docket No. 4

    Defendants ACE Property & Casualty Insurance Company ("ACE Property") and ACE American Insurance Company ("ACE American") (collectively "Defendants") move to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  The Court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on April 9, 2010.  For the reasons discussed below, the

---

[1] This disposition is not designated for publication in the official reports.

motion will be granted, without leave to amend.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Parties**

Plaintiff ProSurance Group, Inc. ("Plaintiff") is a licensed property and casualty insurance agent and broker.  (Compl. ¶ 2.)  Defendants are wholly-owned subsidiaries of ACE Limited, a commercial property and casualty insurance organization.  (Defs.' Mot. 3.)  ACE Property formerly was known as CIGNA Property & Casualty Insurance Company, while ACE American formerly was known as CIGNA Insurance Company.  (*See* Romero Decl., Exs. A-B.)

**B.    The Agreements**

On February 1, 1995, Plaintiff and several CIGNA companies entered into an agency agreement (the "1995 Agency Agreement").  Under that agreement, the CIGNA companies "appointed ProSurance to act as their program manager and managing general agent with respect to professional liability insurance policies for the financial services industry."  (Compl. ¶ 9.)  The agreement provided that the CIGNA companies would pay Plaintiff commissions on the net premium on all policies written by Plaintiff pursuant to the agreement.  (*Id.*)  Plaintiff alleges that the 1995 Agency Agreement entitled it to "sole and exclusive owners[hip] of the records of insureds, policyholders and relevant policy information and their use and control for solicitation of business written or bound by or through ProSurance ('Expirations'), even after the termination of its contract with Defendants' subsidiaries."  (*Id.* at ¶ 16 (citing Compl. Ex. 1 at ¶ XI.C).)  Plaintiff also asserts that the 1995 Agency Agreement also provided that Defendants' subsidiaries, for two years following any termination of the agreement, would not "market their acquired underwriting expertise with the financial services program through subproducers of ProSurance.  (*Id.* at ¶ 17 (citing Compl. Ex. 1 at ¶ XI.6).)

The 1995 Agency Agreement also included a contingent commission agreement (the "1995 Contingent Commission Agreement") under which Plaintiff was eligible to earn additional commissions.  In 1999, after ACE acquired CIGNA Corporation's property and casualty businesses, including both 1995 agreements with Plaintiff, Plaintiff and several ACE companies replaced the 1995 Contingent Commission Agreement with a new agreement ("1999 Contingent

2

Commission Agreement").  (Compl ¶ 12.)  That agreement was signed by an ACE representative on behalf of Defendant ACE American, Illinois Union Insurance Company, INA Surplus Insurance Company, Atlantic Employers Insurance Company, and "Affiliated ACE/CIGNA Insurance Companies used for Program Business."  (*Id.* at Ex. 2.)  Under the 1999 agreement, "the contingent commissions were to be evaluated and calculated as of March 31st and paid by Defendants' subsidiary companies to ProSurance by June 30th of each year ProSurance was eligible to earn such commissions."  (*Id.* at ¶ 13 (citing Compl. Ex. 2 at ¶ VII.A).)

In 2002, the parties to the earlier agreements entered into a new broker agreement (the "2002 Broker Agreement") "which was to be effective and apply to business written on and after January 1, 2002, and continue until terminated."  (Romero Decl. Ex. C at Ex. 3 [Demand] ¶ 25.) Under the 2002 Broker Agreement, Plaintiff was to be paid a 21.5% commission as well as the commissions provided by a new contingent commission agreement included as an exhibit to the 2002 Broker Agreement.

**C.      The Alleged Breaches**

Plaintiff alleges that Defendants' subsidiary companies failed to "evaluate and calculate ProSurance's contingent commission pursuant to the [1999 Contingent] Commission Agreement" and to "pay ProSurance its contingent commission pursuant to the [1999 Contingent] Commission Agreement or provide ProSurance with the information used to calculate the contingent commissions as also required by the [1999 Contingent] Commission Agreement."  (Compl. ¶¶ 14-15.)  In addition, Plaintiff claims that in violation of the 1995 Agency Agreement, "following the termination of the parties' relationship, Defendants' subsidiary companies stole ProSurance's Expirations and misappropriated and used the underwriting expertise they acquired from ProSurance to solicit renewals from individual policyholders previously procured from ProSurance."  (*Id.* at ¶ 18.)

**D.      Arbitration**

Pursuant to arbitration clauses in each of the agreements between Plaintiff and Defendants' subsidiaries, Plaintiff filed a demand for arbitration on June 27, 2003, based on, among other things, the alleged breaches described above.  (*See* Romero Decl. Ex. C. at Ex.3.)

3

1    The demand named the following entities as Defendants: Illinois Union Insurance Company,

2    INA Suprplus Insurance Company, Defendant ACE American Insurance Company, Atlantic

3    Employers Insurance Company, "Affiliated ACE/SIGNA Insurance Companies," CIGNA

4    Specialty Insurance Company, and Westchester Surplus Insurance Company.  (*Id.*)  The demand

5    also alleged that "ACE USA, ACE INA Holdings, Inc., ACE Group of Companies and ACE

6    USA Property and Casualty Insurance Companies . . . is and was the parent/holding company of

7    numerous entities including, but not limited to, each of the Defendants" named in the demand.

8    (*Id.*)  The demand stated claims for breach of the 1995 Agency Agreement, breach of the 1999

9    Contingent Commission Agreement, breach of a broker agreement, fraud, declaratory relief, and

10   an accounting.  (*Id.*)  Plaintiff sought damages as well as injunctive relief.  (*Id.*)

11          On September 22, 2009, the three-arbitrator panel awarded Plaintiff net payment from

12   ACE of $1,718,508.  (Romero Decl. Ex. C at Ex. 6.)  On October 22, 2009, the panel denied

13   Plaintiff's request to amend the award, stating expressly that:

14              At no time during the pendency of this arbitration did either party offer evidence
               that would have permitted the Panel to determine either the liability of or damages
15              sustained by individual operating subsidiaries of ACE.

16              The Panel was not asked to and did not make findings for or against any
               individual operating subsidiary of ACE.
17
                The caption on the Final Award was used to identify the subject arbitration,
18              nothing more.

19              It is not the intent of the Panel, nor should the Award be interpreted, to either
               create or impair rights of either party that may have been otherwise preserved by
20              agreement outside of this proceeding.

21   (Romero Decl. Ex. C at Ex. 7.)  Subsequently, the panel issued an amendment to the award

22   declaring that: "1.  ACE Property and Casualty Insurance Company is deleted from the caption to

23   conform to the caption utilized by [Plaintiff] in this arbitration proceeding; 2. The term 'ACE as

24   used in the award is defined to be all ACE/CIGNA companies."  (Romero Decl. Ex. C. at Ex. 8.)

25          On November 25, 2009, Plaintiff initiated a proceeding in a Pennsylvania state court to

26   modify and confirm the panel's award.  The matter is now pending in the Commerce Court Unit

27   of the Court of Common Pleas in Philadelphia, Pennsylvania.

28

1   **E.    The 2003 Lawsuit**

2          On June 27, 2003, the same day that it filed its demand for arbitration, Plaintiff filed a

3   civil action in the Santa Clara Superior Court against "what it believed to be the parent

4   companies of the subsidiaries who breached the contract with ProSurance, namely Ace USA,

5   Ace INA Holdings, Inc., Ace Group of Companies, and Ace USA Property and Casualty

6   Insurance Companies" ("the 2003 lawsuit").  (Compl. ¶ 22; *Prosurance v. Ace USA, et al.*, Santa

7   Clara Superior Court Case No. CV818203.)  Plaintiff amended its complaint on August 20, 2003.

8   The amended complaint alleged three claims: intentional interference with contractual relations,

9   intentional interference with economic advantage, and violation of California Business and

10  Professions Code § 17200 et seq.  (*Id.*)  Plaintiff later dismissed the complaint as to all

11  defendants except for ACE American and ACE Property.  (Compl. ¶ 23.)

12         In February 2005, Plaintiff and Defendants entered into an agreement under which

13  Plaintiff agreed to dismiss the 2003 lawsuit without prejudice and Defendants agreed that the

14  applicable statute of limitations would be tolled until ninety days after final resolution of the

15  arbitration (the "Tolling Agreement").  (Compl. Ex. C.)  The Tolling Agreement also provided

16  that the parties did not waive any defenses or objections to claims made by any opposing party

17  and that Plaintiff would not be barred from bringing a new complaint alleging the same claims

18  asserted in the 2003 lawsuit.

19  **F.    The Current Lawsuit**

20         On December 17, 2009, Plaintiff filed the operative complaint against Defendants in the

21  Santa Clara Superior Court.  The complaint asserts the same three claims Plaintiff asserted in the

22  2003 lawsuit: intentional interference with contractual relations, intentional interference with

23  economic advantage, and violation of California Business and Professions Code § 17200 et seq.

24  Defendants removed the action to this Court and filed the instant motion to dismiss on February

25  10, 2010.

26                                  **II. LEGAL STANDARD**

27         Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a

28  cognizable legal theory or sufficient Facts to support a cognizable legal theory."  *Mendiondo v.*

1  *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to

2  dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in

3  the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  At the

4  same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

5  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

6  to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

7  a cause of action will not do." *Bell Atlantic Corp. v.  Twombly*, 550 U.S. 544, 555 (2007)

8  (internal citations omitted).  Thus, a court need not accept as true conclusory allegations,

9  unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in

10  the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

11  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

12  misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to

13  relief.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1590 (2009) (quoting Fed. R. Civ. P.

14  8(a)(2).  In addition, a "court may disregard allegations in the complaint if contradicted by facts

15  established by exhibits attached to the complaint."  *Sumner Peck Ranch v. Bureau of*

16  *Reclamation*, 823 F.Supp.715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815

17  F.2d 1265, 1267 (9th Cir.1987)).

18       Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

19  be cured by amendment.  *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995).  When

20  amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v. Kipp,*

21  90 F.3d 386, 393 (9th Cir. 1996).

22                                    **III. DISCUSSION**

23  **A.     *Res Judicata***

24       Defendants move to dismiss the instant action on the basis that Plaintiff's claims are

25  barred under the doctrine of *res judicata*.  Under that doctrine, also referred to as claim

26  preclusion, a valid final judgment on the merits of a claim precludes a second action on that

27  claim or any part of it.  *Baker v. General Motors Corp.*, 522 U.S. 222, 233 n.5 (1998).

28  Defendant contends that the claims now asserted by Plaintiff are precluded by the award entered

6

by arbitration panel.  Because this is a diversity action, the Court must apply California law to determine whether the arbitrators' award has preclusive effect on Plaintiff's claims.  *See Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1177.  As the Ninth Circuit recently held:

> Under California's claim preclusion doctrine "a valid, final judgment on the merits precludes parties or their privies from relitigating the same 'cause of action' in a subsequent suit" *(Le Parc Cmty. Ass'n v. Workers' Comp. Appeals Bd.*, 110 Cal. App. 4th 1161, 2 Cal. Rptr. 3d 408, 415 (2003)).  Thus three requirements have to be met: (1) the second lawsuit must involve the same "cause of action" as the first one, (2) there must have been a final judgment on the merits in the first lawsuit and (3) the party to be precluded must itself have been a party, or in privity with a party, to that first lawsuit.

*San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).  California courts have held that the doctrine of *res judicata* applies to arbitration proceedings as well as judicial proceedings.  *See, e.g.*, *Thibodeau v. Crum*, 4 Cal. App. 4th 749, 755 (Cal. Ct. App. 1992).

Plaintiff concedes that it was a party to the arbitration and that the arbitration panel reached a final judgment on the merits.  The parties dispute, however, whether the instant claims and the claims subject to the arbitration award constitute the same "cause of action."

**1.     Whether Same Primary Right Is at Stake**

To determine whether claims constitute the same "cause of action," California courts look to the "primary right at stake":

> "[A] 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083.)

*Le Par Community Ass'n v. Workers' Comp. Appeals Bd.*, 110 Cal. App. 4th 1161, 1170 (Cal. Ct. App. 2003).

Defendants argue that *res judicata* should apply because "[t]he Complaint's allegations flow directly from primary rights which were fully litigated in the Arbitration–that ACE breached the 1995 [Agency Agreement] and 1999 [Contingent Commission Agreement] by failing to make payments, and that ACE misappropriated Expirations." (Defs.' Mot. 17.)  They assert that the

7

1    allegations in the instant complaint "expressly track the allegations in the [arbitration] Demand."

2    (*Id.* at 16 (comparing Complaint ¶¶ 30(a)-(g), 31(a)-(g), 36-38, with Arbitration Demand

3    (Romero Decl. Ex. C at Ex. 3 ¶¶52(a)-(g), 57 (a)-(c)).)

4        Defendants contend that *Brinton v. Bankers Pension Services, Inc.*, 76 Cal. App. 4th 550

5    (Cal. App. Ct. 1999), is controlling.  In *Brinton*, the plaintiff sued a corporation for fraud,

6    negligent misrepresentation, and breach of fiduciary duty related to the failure of several

7    investments.  The trial court granted the corporation's motion for summary judgment on the

8    ground that the plaintiff's claims were barred by *res judicata* because he had brought nearly

9    identical claims against one of the company's officers and the officer's employer, a securities

10   dealership.  In affirming the trial court's judgment, the Court of Appeal held that:

11           Contrary to plaintiff's assertion, the record clearly establishes his NASD claim
             and the present lawsuit sought recovery for the same injury.  The allegations of
12           wrongful conduct contained in the two pleadings are virtually identical.  Both the
             claim and the complaint alleged plaintiff suffered financial losses because of
13           Thon's purported misrepresentations concerning the character of the investments.
             Each sought to hold Titan and defendant liable based on the allegation Thon was
14           acting as each entity's agent when he made the purported misrepresentations.

15    *Brinton*, 76 Cal. App. 4th at 557.

16        Defendants rely on *Thibodeau v. Crum*, 4 Cal. App. 4th 749 (Cal. Ct. App. 1992), for the

17   related proposition that *res judicata* bars not only claims that were arbitrated, but also those that

18   could have been arbitrated.  In *Thibodeau*, an arbitrator awarded the plaintiffs damages following

19   arbitration proceedings they initiated against a general contractor for construction defects on their

20   house.  Subsequently, the plaintiffs brought a civil action against the subcontractor who

21   constructed the driveway to the same house.  The trial court rejected the subcontractor's *res*

22   *judicata* defense, but the Court of Appeal reversed, citing the holding of the California Supreme

23   Court in *Sutphin v. Speik*, 15 Cal. 2d 195 (Cal. 1940), that

24           if [a matter] is actually raised by proper pleadings and treated as an issue in the
             cause, it is conclusively determined by the first judgment.  But the rule goes
25           further.  If the matter was within the scope of the action, related to the
             subject-matter and relevant to the issues, so that it *could* have been raised, the
26           judgment is conclusive on it despite the fact that it was not in fact expressly
             pleaded or otherwise urged. The reason for this is manifest. A party cannot by
27           negligence or design withhold issues and litigate them in consecutive actions.
             Hence the rule is that the prior judgment is *res judicata* on matters which were
28           raised or could have been raised, on matters litigated or litigable.

8

*Sutphin*, 15 Cal.2d at 202 (emphasis in original).  Applying *Sutphin* to the arbitration context, the court in *Thibodeau* observed that "case law . . . indicates that arbitrating parties are obliged, in the manner of *Sutphin*, to place before their arbitrator all matters within the scope of the arbitration, related to the subject matter, and relevant to the issues." *Thibodeau*, 4 Cal. App. 4th at 755 (citations omitted).  The court held that the plaintiffs' suit against the subcontractor was barred by *res judicata* because "if the radiating cracks in the driveway were not encompassed within the . . . arbitration, they most certainly should have been. . . .   We can conceive of no logical reason why the arbitration should encompass the chunks but not the cracks." *Id.* at 756.

The court also addressed the plaintiffs' reliance on *Nakash v. Superior Court*, 196 Cal. App. 3d 59 (Cal. Ct. App. 1987), which acknowledged that "the line dividing those situations compelling application of the doctrine [of res judicata] from those which do not cannot be precisely drawn.  (Rest.2d Judgments, § 24, com. (b).)" 196 Cal. App. 3d at 68.  The *Thibodeau* court cited Witkin's observation that "'[i]f the second suit is on a different cause of action, as where there are successive breaches of an obligation, or separate and distinct torts, or new rights accrued since the rendition of the former judgment, there is no merger. [Citations.]'" *Thibodeau*, 4 Cal. App. 4th at 758 (citing *Nakash*, 196 Cal. App. 3d at 69 (citing 7 Witkin, California Procedure 3d 3d. 1985 Judgements, § 246, p.685)).  It held that in the case before it, "[t]here were no successive breaches of obligations owed [plaintiffs], no separate and distinct torts, and no new rights accrued after the first proceeding.  The arbitration, mandated by the . . . construction agreement, was intended to settle all existing claims between the [plaintiffs] and their general contractor and subcontractors regarding the . . . project." *Thibodeau*, 4 Cal. App. 4th at 458.

Plaintiff denies that the primary right at issue in the instant action is the same as the right decided by the arbitration panel.  It argues that "[t]he primary right at issue in the arbitration was ProSurance's right to the performance of a contractual obligation," while "the primary right at issue in this case is ProSurance's right to be free from third parties tortuous [sic] interference with its contractual relations."  (Pl.'s Opp'n 3-4.)  Plaintiff contends that "[t]he focus of the civil

9

1  action will . . . be whether the ACE parent companies are liable in tort and/or under Business &

2  Professions Code section 17200 for directing their subsidiaries to breach the contract," (*id.* at 4),

3  rather than whether ACE subsidiaries breached the various agreements.

4      Plaintiff argues that both *Thibodeau* and *Brinton* "involved the application of res judicata

5  principals [sic] to subsequent actions arising out of the derivative liability of a party not involved

6  in the prior litigation." (Pl.'s Opp'n 5.)  It asserts that the instant suit "is not seeking to hold the

7  ACE parent companies derivatively liable for their subsidiaries' breach of contract" but instead

8  "is based on separate and distinct tort claims arising from the independent actions of the ACE

9  parent companies in instructing their subsidiaries to breach their agreements with ProSurance,

10  actions for which the parent companies and only the parent companies are liable." (*Id.* at 6.)

11      Defendants effectively refute Plaintiff's argument.  They assert that "[a] complete reading

12  of *Nakash* makes clear that the court was merely articulating that later, subsequent events may

13  generate a new cause of action arising form a different primary right." (Def.'s Reply 9.)  In

14  *Nakash*, the court found that an earlier settlement agreement and the plaintiffs' dismissal with

15  prejudice of a federal claim pursuant to that agreement did not bar a subsequent state claim by

16  the same plaintiff.  The court concluded that "the first action, in federal court, differed greatly in

17  scope as well as in the specific allegations of [defendants'] wrongdoing" and that "[t]he

18  transactional nucleus of facts which generated the second complaint occurred *after* the first

19  judgment."  *Nakash*, 196 Cal. App. 3d at 69-70 (emphasis in original).

20      Although both *Brinton* and *Thibodeau* were based at least in part on findings that the

21  liability of one of the parties was derivative only, Defendants are correct that neither case–nor

22  any other case cited by Plaintiff–holds that application of the *res judicata* doctrine *requires* a

23  derivative liability connection between defendants.  *See Bernhard v. Bank of America Nat. Trust

24  & Sav. Ass'n*, 19 Cal.2d 807, 813 (Cal. 1942) (establishing that the third pertinent question "[i]n

25  determining the validity of a plea of res judicata" is "[w]as the party *against whom the plea is

26  asserted* a party or in privity with a party to the prior adjudication?" (emphasis added)).

27      The Court concludes that the instant action is based upon alleged violations of the same

28  primary right as was litigated previously before the arbitrators.  As is obvious from the fact that

10

1  Plaintiff originally brought the instant claims at the same time that it made its arbitration demand,

2  and from a comparison of the arbitration demand and the instant complaint, the present claims

3  are not based on any allegations of wrongdoing that occurred or was brought to Plaintiff's

4  attention only after the arbitration began.  As it did in the arbitration, Plaintiff seeks redress for

5  interference with its right to the benefits of its agreements with Defendants' subsidiaries, not

6  some later acquired right or unrelated interference with that same right.  The instant case thus is

7  much more like *Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566 (Cal. Ct. App. 2005),

8  than *Nakash*.  In *Higashi*, the Court of Appeal upheld the trial court's application of the *res*

9  *judicata* doctrine to bar a civil conspiracy and "professional negligence" action against a group of

10  accountants following arbitration proceedings against the accountants' clients for breach of

11  fiduciary duty:

12        The primary right asserted in the arbitration against the OCHI partners was the
         right to be free of the wrongful diversion of plaintiff's rightful share of partnership
13        profits to other OCHI partners.  The instant conspiracy and aiding and abetting
         claim against defendants asserts the identical primary right. Thus plaintiff's claim
14        against the OCHI partners is identical to its claim against defendants.

15  *Higashi*, 131 Cal. App. 4th at 575-76.

16      **2.    Whether Claims Were Within Scope of the Arbitration**

17          The fact that the instant case and the arbitration invoke the same primary right does not

18  end the present inquiry, as Plaintiff is not be precluded from asserting the instant claims unless

19  they were within the scope of the arbitration.  *See Sutphin*, 15 Cal.2d at 202.  In order to decide

20  that question, the Court first must determine which arbitration provision or provisions are

21  applicable.  The 1995 and 1999 agreements provide that disputes over "a difference of opinion or

22  interpretation of" the agreements are to be submitted to arbitration.  (*See* Compl. Ex. 1 at § 22

23  (1995 Agreement); *id.* at Ex. 2 at § 22 (1999 Agreement).)  By contrast, the 2002 Broker

24  Agreement contains a broader clause requiring arbitration of disputes arising from " a difference

25  of opinion or of interpretation of this Agreement . . . *or any dispute* arising from or relating to the

26  performance or breach of this Agreement."  (Romero Reply Decl. Ex. F. [2002 Broker

27  Agreement],  § XXI.A (emphasis added).)

28          However, whether or not the 2002 Agreement applies, the parties agree that the instant

11

claims are barred as *res judicata* if the same primary right applies and if the claims could have

been brought under the 1995 or 1999 arbitration provisions.  The Court concludes that the instant

claims could have been arbitrated pursuant to the earlier agreements.  As noted above, the

allegations in the instant complaint mirror the allegations in the demand but for the added

allegations related to Defendants' inducement of the breaches.  The instant claims are predicated

on "differences of opinion or of interpretation" of the agreement to the same extent as the claims

that actually were arbitrated:  Defendants' alleged interference was wrongful only if Plaintiff's

interpretations of the definitions in and parties' obligations under the Agency Agreement are

correct and Defendants' interpretations are incorrect.  For example, Plaintiffs allege that

Defendants induced their subsidiaries to "misappropriate and use the Expirations owned by

ProSurance to solicit renewals and steal clients from ProSurance in material breach of the

Agency Agreement."  (Compl. ¶ 30(d).)  Determination of whether that allegation is true requires

interpretation of the terms of the Agency Agreement.  Paraphrasing *Thibodeau*, the Court "can

conceive of no logical reason why the arbitration should encompass" the contract breach claims

but not the claims based on inducement of those breaches.  *Thibodeau*, 4 Cal. App. 4th at 756.[2,3]

---

[2]Plaintiff's citations to *Culcal Stylco, Inc. v. Vornado, Inc.* and *Phil Crowley Steel Corporation v. Sharon Steel Corp.* do not change the Court's analysis.  Plaintiff cites these cases in support of its assertion that "the courts have recognized interference claims against parent companies as distinct causes of action."  (Pl.'s Opp'n 4.)  *Culcal*, however, involves the application of the affirmative defense of "financial interest privilege" to claims for inducement of breach of contract.  *Culcal*, 26 Cal. App. 3d 879, 881-82 (Cal.Ct. App. 1972).  The case does not address primary rights or any other facet of the *res judicata* doctrine, nor does it stand for the proposition for which Plaintiff offers it.  *Phil Crowley*, while more factually analogous, is equally unhelpful.  In that case, the Eighth Circuit held that under Missouri law allowed a plaintiff to pursue an intentional interference claim against a parent entity separately from a breach of contract action against the subsidiary.  702 F.2d 719, 722 (8th Cir. 1983).  In so holding, the court clearly founded its opinion on Missouri state law regarding collateral litigation.  *See, e.g.*, 702 F.2d at 721 ("We believe that Missouri would apply the collateral litigation exception in these circumstances." (footnote omitted).)

[3]The Court also finds unpersuasive Plaintiff's argument that Defendants' in effect waived the *res judicata* defense by signing the Tolling Agreement (Pl.'s Opp'n 8-10).  The only defense waived in the Tolling Agreement was the statute of limitations.  Indeed, the Tolling Agreement expressly preserves all other defenses.  Plaintiff's contention that Defendants were aware of its intent to bring this action following the arbitration is irrelevant to the Court's determination of

12

1

## IV. CONCLUSION

2       For the foregoing reasons, Defendant's motion is granted.  Because the determination

3   appears to be entirely one of law, leave to amend will be denied.

4

5   **IT IS SO ORDERED.**

6   DATED: 5/12/10

7                                                           JEREMY FOGEL
                                                            United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the applicability of the *res judicata* doctrine.

13